UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

SANDOZ, INC.,

Plaintiff,

v.

FOOD AND DRUG ADMINISTRATION, MICHAEL O. LEAVITT and ANDREW C. VON ESCHENBACH,

Defendants.

Civil Action No. 06-1134

OPPOSITION OF RANBAXY LABORATORIES LIMITED TO MOTION OF SANDOZ PHARMACEUTICALS FOR TEMPORARY RESTRAINING ORDER

Sandoz, Inc. ("Sandoz") challenges the Food and Drug Administration's ("FDA") relisting of two patents in the Approved Drug Products with Therapeutic Equivalence Ratings ("Orange Book") and the Agency's requirement that all pending Abbreviated New Drug Applications ("ANDA") contain paragraph IV certifications to those patents. These are actions that the FDA was required to take in order to effectuate the Court's decision and judgment in Ranbaxy v. Leavitt, 2006 U.S. Dist. LEXIS 24612 (D.D.C. 2006) (attached as Exh. A hereto).

As explained in the attached letter from FDA, the issue before the Court in that case was whether it was permissible for FDA to remove U.S. Patent Nos. RE 36481 ("the '481 patent") and RE 36520 ("the '520 patent") from the Orange Book when ANDA applicants had already submitted paragraph IV certifications to those patents, and thus had become eligible for 180-day exclusivity under Section 505(j)(5)(B)(iv) of the Federal Food, Drug, and Cosmetic Act ("FDCA"). Letter from Steven K. Galson, Director, Center for Drug Evaluation and Research to

Monte R. Browder, et al. (June 22, 2006) ("Galson Letter") (attached as Exh. B hereto). Ranbaxy Laboratories Limited, Ranbaxy Pharmaceuticals, Inc., and Ranbaxy, Inc. (collectively, "Ranbaxy") and IVAX Pharmaceuticals, Inc. ("IVAX"), who would have been eligible for 180-day exclusivity had the patents remained listed, sued FDA in response to the delisting of the '481 and '520 patents. Judge Roberts held that FDA's denial of Ranbaxy's and IVAX's right to exclusivity was contrary to the intent of Congress, and remanded the decision to FDA. FDA appealed the district court decision, but did not seek a stay of the decision. See Ranbaxy Labs v. Leavitt, No. 06-5154 (D.C. Cir. June 1, 2006) (order granting expedited review and setting briefing schedule).

Because FDA is bound by Judge Roberts' decision, the agency is required to relist the patents and take steps to recognize and give effect to Ranbaxy's and IVAX's exclusivity. To do so, it has required all ANDA applicants that filed ANDAs after Ranbaxy and IVAX, including Sandoz, to include in their ANDAs paragraph IV certifications to the relisted patents. This decision is not only reasonable, but necessary. Failing to do so would be a failure to comply with Judge Roberts' decision.

If Sandoz wanted to participate in the deliberations about whether these patents should or should not be delisted, and whether, as a result, it was or was not required to submit paragraph IV certifications, it has had ample opportunity to do so. Sandoz could have intervened to make its arguments in an orderly way in Ranbaxy v. Leavitt. Instead it has chosen, on the day before approvals are due, to file this motion. Having failed to take advantage of previous opportunities, Sandoz should not be allowed to delay Ranbaxy's approval now.

In order to obtain a preliminary injunction or a temporary restraining order, a party must show (1) that there is a substantial likelihood that the plaintiff will succeed on the merits; (2) that

the plaintiff will be irreparably injured if the injunction is not granted; (3) that the injunction will not substantially injure other parties; and (4) that the public interest will be furthered by the injunction. Serono Labs. Inc. v. Shalala, 158 F.3d 1313, 1317-18 (D.C. Cir. 1998). Sandoz has failed to demonstrate that it can satisfy any of these prongs. In particular, the likelihood of success and the public interest weigh heavily against the grant of preliminary relief. Therefore, Sandoz' Motion for Temporary Restraining Order should be denied.

Likelihood of Success of the Merits

Sandoz' likelihood of success on the merits is at best negligible. Sandoz first argues that FDA has no basis for relisting the patents at issue. This is not correct. FDA has pointed out the Galson Letter that Judge Roberts' Order "effectively requires that the patents be relisted." Exh. B at 2. As Judge Huvelle explained in Torpharm, Inc. v. Thompson, 260 F. Supp. 2d 69, 85 (D.D.C. 2003), aff'd, 354 F.3d 877 (D.C. Cir. 2004):

> where an agency's assurances about the law are subsequently undermined through the process of judicial review, it is clear that the agency may rectify its original mistake without concern about retroactivity. The fact that one party may have relied on that mistake does not render its belated correction unlawful, at least (as here) where the correction comes in direct response to the decision of a federal court.

See also Verizon Tel. Cos. v. FCC, 269 F.3d 1098, 1111 (D.C. Cir. 2001).

FDA has done nothing more than relist the patents that it erroneously delisted. It took this action directly in response to Ranbaxy v Leavitt. Upon the relisting, Sandoz was required to submit paragraph IV certifications. See Apotex, Inc. v. Thompson, 347 F.3d 1335, 1350-1 (Fed. Cir. 2003). Sandoz cannot credibly maintain that its ANDA should be approved because it has no paragraph IV certification when it is required by the statute to have such a certification.

Sandoz' argument that FDA's relisting is inconsistent with the agency's ministerial role in patent listing is equally specious. Memo. in Support of Sandoz, Inc.'s Mot. for a Temp. Restr.

Order at 11-12 ("Sandoz Brief"). In fact, in Ranbaxy v. Leavitt, FDA relied on its ministerial role as a reason for its original decision to delist these patents. The Court was not persuaded. Whatever the nature of FDA's role, FDA could not refuse to relist these patents in the face of Judge Roberts' decision.

Sandoz argues that, under the statute, ANDA applicants that originally had paragraph IV certifications are blocked by IVAX's and Ranbaxy's exclusivity, and that applicants like Sandoz that never had a paragraph IV certification are not blocked. This argument is without basis in the FDCA. Even Sandoz does not make the argument with any conviction, arguing that the statute's provisions "permit – if not require" this interpretation. Sandoz Brief at 13. Whether the statute "permits" such an interpretation, which it surely does not, is not relevant here. FDA has not chosen to interpret the statute as Sandoz suggests.

Simply put, Sandoz seeks to exploit FDA's error in delisting the '481 and '520 patents. It should not be allowed to do so.

Sandoz Cannot Show it Will Suffer Irreparable Harm if Relief is Not Granted

Because Sandoz has almost no chance of success on the merits, it must show that it will suffer great irreparable harm if it is denied relief, while Ranbaxy will not be substantially harmed if relief is granted. It can do neither.

This Court recently had occasion to address the showing that a plaintiff must make in order to establish that it is entitled to a temporary restraining order:

> The irreparable injury requirement erects a very high bar for a movant. See Varicon Int'l v. OPM, 934 F. Supp. 440, 447 (D.D.C. 1996). A plaintiff must show that it will suffer harm that is "more than simply irretrievable." Gulf Oil Corp. v. Dept. of Energy, 514 F. Supp. 1019, 1026 (D.D.C. 1981). In this jurisdiction, harm that is "merely economic" in character is not sufficiently grave under this standard. See Wisconsin Gas Co. v. FERC, 758 F.2d 669, 674 (D.C. Cir. 1985); Boivin v. US Airways, Inc., 297 F. Supp. 2d 110, 118 (D.D.C. 2003); Mylan Pharms., Inc. v. Shalala, 81 F. Supp. 2d

> 30, 42 (D.D.C. 2000). To successfully shoehorn potential economic loss into the irreparable harm requirement, a plaintiff must establish that the economic harm is so severe as to "cause extreme hardship to the business" or threaten its very existence. Gulf Oil, 514 F. Supp. at 1025; see also Wisconsin Gas, 758 F.2d at 674; Experience Works, Inc., 267 F. Supp. 2d at 96; Sociedad Anonima Vina Santa Rita v. Dep't of Treasury, 193 F. Supp. 2d 6, 14 (D.D.C. 2001). To warrant emergency injunctive relief, the harm alleged must be certain, great, actual, and imminent. See Wisconsin Gas, 758 F.2d at 674. Moreover, because Apotex has not established a likelihood of success on the merits, its showing of irreparable harm must be very strong. See Cuomo, 772 F.2d at 974; Davenport, 166 F.3d at 366.

Apotex, Inc. v. Food and Drug Administration, 2006 U.S. Dist. LEXIS 20894 at *53-54, aff'd, 2006 U.S. App. LEXIS 14086 (D.C. Cir. 2006). Sandoz does not and cannot satisfy this "very high bar."

Apotex involved an analogous situation to the one present here. There, as here, a potential generic entrant sought to enjoin FDA from approving the ANDAs of the applicants entitled to 180-day exclusivity. Judge Bates denied their motion for a preliminary injunction in part because Apotex was unable to make the requisite showing of irreparable harm. Sandoz stands in the same position in this case as Apotex did in the earlier case.

Moreover, Sandoz' "delay in bringing this action further undercuts its allegation of irreparable harm." Mylan Pharms., Inc. v. Shalala, 81 F. Supp. 2d 30, 44 (D.D.C. 2000). Ranbaxy and IVAX's Citizen Petitions asserting that the Merck patents were wrongly delisted were a matter of public knowledge, filed with FDA even before Sandoz submitted its ANDA to FDA. Ranbaxy's lawsuit, filed last year, was reported in the trade press, Exh. C, and discussed extensively within the Generic Pharmaceutical Manufacturer's Association ("GPHA"), which considered filing an amicus brief in the case. Sandoz' President and Chief Executive Officer sits on the GPHA Board of Directors. Exh. D. Judge Robert's decision is now nearly two months old. Sandoz surely has known for some time that it might be required to file paragraph IV

certifications on these patents. Sandoz could have intervened in any of these precedings to protect its alleged claim to approval. Its failure to do so undermines any claim of immediacy. See Ben Venue Labs, Inc. v. Novartis Pharm. Corp., 10 F. Supp. 2d 446, 459 (D.N.J. 1998).

Ranbaxy Will Be Substantially and Irreparably Harmed if Sandoz' TRO Is Granted

Ranbaxy will suffer substantial and irreparable harm if Sandoz is permitted to enter the generic simvastatin market on June 23, 2006. Ranbaxy is ready to begin selling its generic simvastatin product to its customers. It has invested many millions in the development the drug, and has already spent over $14 million on building, equipment and inventory purchases for production at the Ohm facility in New Jersey. See Declaration of Jayadeep R. Deshmukh ¶¶ 6, 9 ("Deshmukh Decl."). Ranbaxy already has deals with a total of ten pharmacies from which Ranbaxy expects to earn at least $77 million in annual sales, and expects to enter into additional agreements once its product is on the market. Id. ¶ 10. Thus, if Sandoz' TRO is granted and Ranbaxy is prohibited from entering the simvastatin market on June 23, 2006, it will suffer lost sales totaling hundreds of thousands of dollars a day that it will never be able to recover to help offset its huge investments in the drug. Id. ¶¶ 10-11. If it is not able to deliver its product to its customers on this date as promised, irreparable damage will also be done to its customer relationships and credibility, and its ability to negotiate long-term contracts and access larger customers in the future would be impaired. Id. ¶ 11.

Dr. Reddy's Laboratories Ltd. may begin marketing its authorized generic version of simvastatin at any time. Id. Though it is uncertain whether it will do so before other generics enter the market, it has a strong incentive to do so since it can begin to take control of the generic market in the absence of competition. If it does, Ranbaxy would also be deprived of the intangible benefits that accrue to the first market entrant, such as the opportunity to become the most visible generic entrant, forge early relationships with customers and establish distribution

channels, and acquire market share, all of which will provide benefits even beyond the exclusivity period. As this Court has recognized, "[t]he earliest generic drug manufacturer in a specific market has a distinct advantage over later entrants." Mova Pharm. Corp. v. Shalala, 955 F. Supp. 128, 131, aff'd 140 F.3d 1060 (D.C. Cir. 1998). Loss of this statutory "head start" will cause Ranbaxy irreparable injury. Ranbaxy stands to lose "a statutory entitlement, which is a harm that has been recognized as sufficiently irreparable. . . . Once the statutory entitlement has been lost, it cannot be recaptured." Apotex, 2006 U.S. Dist. LEXIS at *58 (citing Mova Pharms. Corp. v. Shalala, 140 F.3d 1060, 1067 n.6 (D.C. Cir. 1998).

Furthermore, Merck has already begun lowering the price on its product to preempt loss of market share to generics. Deshmukh Decl. ¶ 11. Thus, any delay in market entry will cause substantial harm to Ranbaxy regardless of what Dr. Reddy's does.

The Public Interest Favors Entry of Preliminary Relief

As this court has explained, the public interest would not be furthered by preserving the alleged status quo, that is, by preventing any generics from entering the market, since "[s]uch an order would effectively constitute a constructive extension of the brand manufacturer's patent." Apotex, 2006 U.S. Dist. LEXIS at *60. This would only forestall the availability of cheaper versions of simvastatin to the public, and preclude substantial savings to consumers, employers, and the government alike. Though the authorized generic will likely sell for less than the brand-name drug (if it does in fact launch prior to Ranbaxy), it is highly unlikely to offer nearly the amount of savings that third party generics would. See id. at *61.

The public interest also strongly favors the faithful application of the FDCA. Mova, 955 F. Supp. at 131; Bracco Diagnostics v. Shalala, 963 F. Supp. 20, 30 ("Requiring [FDA] to act lawfully is also very much in the public interest."); Whitaker v. Thompson, 248 F. Supp. 2d 1, 46 (D.D.C. 2002) ("[I]t is clearly in the public interest to ensure that governmental agencies, such as

the FDA, fully comply with the law . . ."). Because the purpose of the Hatch-Waxman Amendments was "to expedite and increase the availability of generic substitutes," Apotex, 2006 U.S. Dist. LEXIS at *61, as well as to give generic companies a powerful incentive to challenge brand-name companies' patents by rewarding such with 180-day exclusivity, the public interest strongly favors the denial of Sandoz' motion.

Conclusion

Sandoz submitted its ANDA years after Ranbaxy and IVAX. Sandoz waited to submit its ANDA until it could avoid filing a paragraph IV certification, and thus avoided exposing itself to the risk of patent litigation. Now it seeks a windfall that it has not earned. Instead of participating in Ranbaxy v. Leavitt, in which its interest could have been adjudicated along with that of others, it has waited until the day before FDA decisions are due to try to stop the approvals of Ranbaxy's and IVAX's ANDAs. Sandoz has known at least since April 30, 2006, when Ranbaxy v. Leavitt was decided, that it would have to file paragraph IV certifications; yet it raises this issue only now. These are not the actions of a company that deserves injunctive relief. If Sandoz is without time to fully argue its case, it has only itself to blame.

Dated: June 22, 2006

Respectfully submitted,

Kate C. Beardsley
D.C. Bar No. 416806
Carmen M. Shepard
D.C. Bar No. 331314

Buc & Beardsley
919 Eighteenth Street, N.W.
Suite 600
Washington, D.C. 20006
(202) 736-3600

Counsel for Ranbaxy