UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

----------------------------------------------------------
                                              )
SANDOZ, INC.,                                 )
                                              )
    Plaintiff,                                )
                                              )
v.                                            )   Civil Action No. 06-1134
                                              )
FOOD AND DRUG ADMINISTRATION,                 )
MICHAEL O. LEAVITT and                        )
ANDREW C. VON ESCHENBACH,                     )
                                              )
    Defendants.                               )
----------------------------------------------------------)

## DECLARATION OF JAYADEEP R. DESHMUKH

1. I, Jayadeep R. Deshmukh, am the Vice President - Intellectual Property for Ranbaxy Laboratories Limited. Ranbaxy Laboratories Limited is a publicly traded company engaged in the development, manufacturing and marketing of pharmaceuticals in the United States and worldwide. Ranbaxy Pharmaceuticals, Inc. is a wholly owned subsidiary of Ranbaxy Inc., which is ultimately a wholly owned subsidiary of Ranbaxy Laboratories Limited. Ranbaxy Inc. is the agent of Ranbaxy Laboratories Limited in the United States. Ranbaxy Laboratories Limited has dealt and continues to deal with the United States Food and Drug Administration ("FDA") through Ranbaxy Inc. and Ranbaxy Pharmaceuticals, Inc.

2. As the Vice President - Intellectual Property for Ranbaxy Laboratories Limited, I am responsible for all intellectual property and regulatory legal aspects of Ranbaxy Laboratories Limited's pharmaceutical business in the United States and in the rest of the world. I am familiar with the marketing of drug products in general and with the marketing of generic drugs in particular. This document is based on my personal knowledge and records retained by Ranbaxy in the ordinary course of business.

3. I obtained a B.S. in Chemical Engineering in 1984 from Manipal Institute of Technology in India, an M.S. in Chemical Engineering in 1989 from Cleveland State University, and a J.D. in 1992 from Case Western Reserve University. I joined Ranbaxy Laboratories Limited in 1998. I was a patent attorney at Frost and Jacobs during 1992-1994 and at Dinsmore & Shohl LLP during 1994-1998.

4. Ranbaxy Laboratories Limited manufactures and markets generic and branded generic pharmaceuticals as well as active pharmaceutical ingredients ("API"). The company also is engaged in research and development of several novel drugs.

5. Ranbaxy has made a major investment in the production of generic versions of the statin drugs, including simvastatin, believing that it could provide them to the public at a much lower price than that of the brand name drugs.

6. Ranbaxy was aware that the holders of the New Drug Applications ("NDA") for the brand-name statin drugs were attempting to protect their interests with a number of patents. In an effort to get non-infringing generic versions of the drugs to market as rapidly as possible, Ranbaxy made a substantial investment in its research and development and intellectual property capabilities. Ranbaxy believed that it would be able to recoup its investment because it would be able to obtain 180-day exclusivity by virtue of being the first to file an Abbreviated New Drug Application ("ANDA") containing a paragraph IV certification for at least some of the drugs.

7. Ranbaxy successfully developed a non-infringing simvastatin drug product and was the first applicant to submit an ANDA referencing Zocor® (simvastatin) with a paragraph IV certification to U.S. Patent No. RE 36,481 ("the '481 patent"), and U.S. Patent No. RE 36,520 ("the '520 patent") for simvastatin 80 mg (Zocor). At the time the paragraph IV certifications were filed for the '481 and '520 patents, each was listed in the Orange Book as claiming Zocor.

Ranbaxy was aware that submitting the paragraph IV certifications to the '481 and '520 patents would expose Ranbaxy to patent infringement litigation from Merck.

8. As the first to submit a substantially complete ANDA for the 80 mg strength with a paragraph IV certification to the '481 and '520 patents, Ranbaxy is entitled to 180 days of marketing exclusivity for the 80 mg strength of simvastatin. Ranbaxy fought long and hard to have its exclusivity recognized. Though FDA disputed Ranbaxy's entitlement to exclusivity, this Court recently held that Ranbaxy is entitled to 180-day exclusivity for simvastatin. Ranbaxy Labs. Ltd. v. Leavitt, 2006 U.S. Dist. LEXIS 24612 (D.D.C. 2006), appeal docketed.

9. Ranbaxy has invested considerable resources in developing its ANDA for generic simvastatin and in preparing to launch the product once the formulation and composition patent, U.S. Patent No. 4,444,784 ("the '784 patent"), expires on June 23, 2006. For example, Ranbaxy has spent $22 million in increasing fermentation capacity and other facility expansion, $7.5 million on building and equipment costs, and has already invested $6.7 million in simvastatin-directed materials, such as API and bulk product inventory.

10. Ranbaxy is currently ready to begin marketing simvastatin once the '784 patent expires on June 23, 2006. It has approximately 30 million tablets of finished product inventory ready to move, and more importantly, agreements with customers who are eager to line their shelves with Ranbaxy's product. Ranbaxy already has agreements with ten pharmacies from which Ranbaxy expects to earn over $77 million in annual sales, and expects to enter into additional agreements once its product is on the market.

11. Ranbaxy already is in competition with Merck & Co., Inc. ("Merck") and Dr. Reddy's Laboratories Ltd. ("Dr. Reddy's"), Merck's authorized generic, for sales of 80 mg simvastatin. Merck has announced that it has reached an agreement with UnitedHealth Group to supply

3

simvastatin at a price that Merck calculates will enable it to undercut Ranbaxy. Any delay in launching its product will allow Merck to continue to enter into such contracts, tie up distribution channels and access to customers and benefit from increased sales across other products, all at the expense of Ranbaxy. Ranbaxy estimates that even a short delay will mean millions of dollars in short term losses and potentially much more from the loss of customers who may shift to Merck or Dr. Reddy's if Ranbaxy's launch of its product is delayed. These loses would be irretrievable. Not being able to deliver simvastatin on June 23, 2006 as promised would also damage its business relationships with its customers and undermine the company's credibility.

12. If Sandoz were permitted to enter the generic simvastatin market at the same time as Ranbaxy, Ranbaxy would, by definition, be deprived of the exclusivity to which it is statutorily entitled. This would immediately result in lost sales and lost profits. According to Hoovers, Novartis AG, Sandoz' parent company, dwarfs Ranbaxy in size – its annual sales exceed $32 billion, over 25 times those of Ranbaxy. If Sandoz obtains approval during Ranbaxy's exclusivity period, Ranbaxy estimates that its sales will be cut in half, and its profits will be reduced by at least 60-70%.

13. Loss of its statutorily mandated "head start" would also cause Ranbaxy irreparable injury because it would deprive Ranbaxy of the intangible benefits that go along with being the first generic on the market, such as the opportunity to become the most visible generic entrant, forge early relationships with customers, and acquire market share. All of these benefits extend far beyond the exclusivity period. As this Court has observed, "[t]he earliest generic drug manufacturer in a specific market has a distinct advantage over later entrants." Mova v. Shalala, 955 F. Supp. 128,131, aff'd 140 F.3d 1060 (D.C. Cir. 1998). If other generics are permitted to

enter the market as well — at present there are at least two others with tentative ANDA approvals for simvastatin — the harm to Ranbaxy would be even greater.

14. Ranbaxy will be substantially, and irreparably, harmed if FDA is enjoined from approving its ANDA.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 22nd day of June 2006.

_____
Jayadeep R. Deshmukh