**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

RANBAXY LABORATORIES LIMITED, *et al.*,

Plaintiffs-Appellees,

and

IVAX PHARMACEUTICALS, INC.,

Plaintiff, Appellee,

v.

MICHAEL O. LEAVITT,

Secretary of Health & Human Services, *et al.*

Defendants-Appellants.

No. 06-_____

[D.D.C. No. 05-1838 consolidated with D.D.C. No. 05-2180]

**Appellants' Motion for Expedited Briefing and Oral Argument**

For the reasons set forth herein, Defendants-Appellants Michael O. Leavitt, Secretary of the Health and Human Services, *et al.*, respectfully move for an expedited briefing schedule and oral argument in the above-captioned appeal. A notice of appeal was filed on May 24, 2006 (attached as Addendum A to this motion), and a proposed schedule is set forth in Point 5 below.[1]

[1] A "Certificate as to Parties, Rulings, and Related Cases" is attached as Addendum C.

As noted in Point 4 below, expedition is warranted because this case will become moot approximately 180 days after June 23, 2006. In addition, expedition is warranted because the district court's decision is currently the only obstacle to the Food and Drug Administration's (FDA) ability to approve on June 23rd *all* applications to market a generic version of the brand name drug at issue, which is very widely used. The sooner the Court resolves the issue presented — assuming the Court does so in FDA's favor — the sooner *full* generic competition can begin and the sooner the public can reap the benefit of full competition. See D.C. Circuit Handbook of Practice and Internal Procedures (2002) (D.C. Handbook) at 33-34. Furthermore, the issue presented is of substantial importance to consumers because it involves the timing of approval of generic drug products and is of vital importance to the pharmaceutical industry, whose business plans depend on how the statutory provisions at issue are interpreted. *Ibid.*

On May 24 and 25, 2006, counsel for FDA contacted counsel for the appellees — Ivax Pharmaceuticals, Inc. (Ivax) and Ranbaxy Laboratories Limited, Inc. (Ranbaxy) — who stated that, while they do not believe this case warrants expedited treatment under the standard set forth in the D.C. Circuit, Handbook of Practice and Internal Procedures, they are amenable to briefing on the schedule the government proposes.

**1. Introduction.**

This case involves the provision in the Hatch-Waxman Amendments to the Federal Food, Drug, and Cosmetic Act (FDCA) that authorizes FDA to award in certain circumstances a period of 180 days of generic market exclusivity to a generic drug manufacturer. See 21 U.S.C. 355(j)(5)(B)(iv) (2003). Those circumstances arise where a generic drug manufacturer is the first to file a "paragraph IV certification" (explained more fully below) in its generic drug application (an "abbreviated new drug application" known as an "ANDA"), certifying that its generic drug product will not infringe a patent listed by the pioneer drug company in FDA's "Approved Drug Products With Therapeutic Equivalence Evaluations" (the "Orange Book"). See generally *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1064 (D.C. Cir. 1998).[2]

---

[2] Congress amended 21 U.S.C. 355(j) in late 2003. See The Access to Affordable Pharmaceuticals provisions of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub. L. No. 108-173, 117 Stat. 2066 (Dec. 8, 2003) (MMA). Pursuant to the effective dates of those amendments, they do not apply to the exclusivity determinations for the ANDAs in this case because the earliest ANDA containing a paragraph IV certification was submitted before the December 8, 2003 enactment date of the MMA. See *id.* § 1102(b)(1). Approximately twelve drugs are likely to be affected by resolution of the delisting issue under the pre-amendment version of the statute. Except where otherwise noted, this motion refers to the pre-MMA version of the statute.

At issue in this case is whether FDA can delist a patent from its Orange Book after a generic drug applicant has filed an ANDA containing a paragraph IV certification but before litigation ensues concerning the patent. The effect of the delisting would be to deny the applicant the 180-day period of marketing exclusivity it would have enjoyed vis-a-vis other generic applicants for the same drug product had delisting not occurred. The district court ruled that FDA could not delist in that circumstance, meaning that FDA was required to relist the patents at issue (concerning Merck's cholesterol lowering drug Zocor) and thus provide Ivax and Ranbaxy with a 180-day period of market exclusivity for their respective generic drug products. See n.2, *infra*.

**2. Statutory and Regulatory Background.**

At issue in this case is the approval process for generic versions of "pioneer" or "innovator" drugs. Pharmaceutical companies seeking to market generic versions of approved drug products may file ANDAs. 21 U.S.C. 355(j). An ANDA must contain one of four specified certifications for each patent that "claims the listed drug" or "a use for such listed drug for which the applicant is seeking approval." 21 U.S.C. 355(j)(2)(A)(vii). This certification must state one of the following:

(I) that the required patent information relating to such patent has not been filed;
(II) that such patent has expired;
(III) that such patent will expire on a particular date; or
(IV) that such patent is invalid or will not be infringed by the drug for which approval is being sought.

See 21 U.S.C. 355(j)(2)(A)(vii). If an applicant wishes to challenge the validity of a patent, or to claim that the patent would not be infringed by the product proposed in the ANDA, the applicant must submit a paragraph IV certification to FDA. The applicant must also provide timely notice of its paragraph IV certification to the NDA holder and the patent owner explaining the factual and legal basis for the applicant's opinion that the patent is invalid or not infringed. 21 U.S.C. 355(j)(2)(B); 21 C.F.R. 314.107(f)(2).

Because the filing of an ANDA with a paragraph IV certification is an act of infringement, 35 U.S.C. 271(e)(2)(A), the NDA holder or patent owner may sue the ANDA applicant for patent infringement. As an incentive to the first generic drug manufacturer to expose itself to patent litigation, the statute provides that the manufacturer who files an ANDA containing the first paragraph IV certification to a patent is eligible for a 180-day period of marketing exclusivity. 21 U.S.C. 355(j)(5)(B)(iv). See *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1064 (D.C. Cir. 1998). However, if a patent is delisted from the Orange Book between the

filing of the first and second ANDAs, the second filer would not need to make a certification regarding the patent (because the patent would not be considered a patent for which information must be filed in the Orange Book, see 21 U.S.C. 355(j)(2)(A)(vii)), and there would be no exclusivity period to be triggered, see 21 U.S.C. 355(j)(5)(B)(iv). In this connection, FDA regulations provide that, if a patent is removed from the Orange Book, any applicant with a pending application containing a patent certification shall amend the application to make the appropriate certification, 21 C.F.R. 314.94(a)(12)(viii)(B). In this case, such amendment would have the effect of eliminating the period of generic exclusivity that would have attached to that patent had it not been delisted and had the ANDA applicants maintained their paragraph IV certifications.

**3. Factual background and district court decision.**

The facts are not in dispute and are taken from pp. 9-14 of the district court's opinion, which is attached as Addendum B to this motion.

**a.** Merck markets Zocor, whose active ingredient is simvastatin. Merck holds three patents for simvastatin — the '784, '481, and '520 patents. In December 2000 and November 2001, Ivax and Ranbaxy submitted ANDAs for

generic versions of Zocor.[3] They certified that the '481 and '520 patents were invalid or unenforceable or would not be infringed (paragraph IV certifications) and that the '784 patent would expire on June 23, 2006 (a paragraph III certification). Ivax and Ranbaxy gave the required notice of the filing of the paragraph IV certifications to Merck, which did not sue either of them during the 45 days provided for in the FDCA.

In October 2003, Merck asked the FDA to delist the '481 and '520 patents from the Orange Book. A month later a law firm challenged the listing of those patents as improper under a new FDA regulation issued in June 2003. Merck renewed its request to delist the patents, and subsequently, FDA did so in September 2004.

Ivax and Ranbaxy submitted citizen petitions asking FDA to relist the patents in the Orange Book and to refrain from approving ANDAs other than their own until the 180-day generic exclusivity period expired. By letter dated October 24, 2005, FDA denied both petitions. It explained its longstanding policy on delisting, and emphasized that the statute does not address the effect of a delisting

---

[3] Ivax submitted an ANDA for the 5 mg, 10 mg, 20 mg, and 40 mg strengths of simvastatin; Ranbaxy submitted an ANDA for all strengths of simvastatin, including the 80 mg strength. Ivax was the first to file an ANDA with a paragraph IV certification as to the 5mg, 10mg, 20mg, and 40mg strengths, and Ranbaxy was the first as to the 80mg strength.

on the exclusivity period. Op. 7-9. FDA ordinarily delists upon request of the patent holder, but concluded that it would be unfair to do so when the patent holder has sued the ANDA applicant and the applicant has therefore borne the cost and exposure of litigation. *Ibid.* In all other circumstances, however, FDA determined that delisting is appropriate at the request of the patent holder and that the mere filing of the first ANDA with a paragraph IV certification does not vest the applicant with a right to exclusivity irrespective of subsequent changes in circumstances. *Ibid.*

**b.** The district court disagreed with FDA's reading of the statute. The court acknowledged that "[t]he statute does not address * * * how the FDA is to remove patents from [the Orange Book]." Op. 7. The court also acknowledged that the FDA is generally entitled to *Chevron* deference. Op. at 21. However, the court thought FDA's approach inconsistent with the structure and purposes of the statute. In the court's view, "[t]he issue here * * * is whether the FDA can effectively restrict the reward [of exclusivity] to only a sued ANDA holder by delisting a patent after the ANDA holder successfully avoided suit." Op. 19. The court thought that the first filer may qualify for the exclusivity period in either of two ways: prevailing in litigation or actually marketing the product. Here, according to the court, Ivax and Ranbaxy succeeded in avoiding litigation, which

should qualify to prohibit FDA from delisting and, therefore, to require ANDA applicants who filed after the erroneous delisting, or who amended their paragraph IV certifications as a result of the delisting, to amend their ANDAs to include paragraph IV certifications to the '481 and '520 patents. In the court's view, FDA offered "disparate treatment" to those who prevailed in litigation and those who avoided it, and thought that such disparate treatment is inconsistent with the statutory scheme, because under the statute a person need not prevail in litigation to be entitled to the exclusivity. Op. 21.

Pursuant to the district court's ruling, FDA must relist the '481 and '520 patents as requested by Ivax and Ranbaxy. All ANDAs for simvastatin will thus have to be amended to include paragraph IV certifications to the relisted patents and, accordingly, be subject to a stay of final approval until expiration of the 180-day period that commences on the first day of commercial marketing of Ivax's and Ranbaxy's generic products.

**4. Reasons for expedition.**

Expedition is warranted because, if both Ivax and Ranbaxy receive final approval on June 23rd (when the last listed patent expires) and begin commercial marketing on that date, the case will become moot 180 days later on December 23rd. Expedition is necessary to avoid mootness.

Expedition is also warranted because the district court's decision is currently the only obstacle to the FDA' approval of *other* simvastatin ANDAs on June 23rd. Because the biggest decreases in prices occur when more than one generic product enters the market,[4] the sooner the Court resolves the issue presented — assuming the Court does so in FDA's favor — the sooner *full* generic competition can begin and the sooner the public can reap the benefit of full competition. Even if the Court were to rule against FDA, an expedited decision is warranted because the decision will provide guidance to both FDA and the pharmaceutical industry, whose business decisions will necessarily take into account the Court's resolution of the issue presented here. D.C. Handbook at 34 ("The Court also may expedite cases in which the public generally, or in which persons not before the Court, have an unusual interest in prompt disposition.").

Furthermore, should there be a delay in final approval of Ivax's and/or Ranbaxy's ANDAs beyond June 23rd, it would mean a further delay in *full* generic competition since, under the district court's decision, FDA approval of all other generic versions of simvastatin must be delayed for 180 days after Ivax and

[4] A duopoly preserves more market power than open competition.

Ranbaxy begin commercial marketing.[5] Accordingly, the longer FDA is barred from approving other simvastatin ANDAs, the longer Merck retains its monopoly and the public is denied generic versions of some or all strengths of simvastatin. Thus, expedition is warranted for this additional reason. See *ibid.*[6]

**5. Requested briefing schedule.**

The government requests the following briefing schedule:

1. FDA's opening brief and Joint Appendix due June 21, 2006;
2. Appellees' answering briefs due July 21, 2006;
3. FDA's reply brief due July 28, 2006; and
4. Oral argument at the Court's earliest convenience following briefing and, if possible, in early September 2006.

---

[5] Since Merck delisted the '481 and '520 patents, there is no patent litigation so only commercial marketing will trigger the start of the 180-day period of generic exclusivity. See 21 U.S.C. 355(j)(5)(B)(iv)(I).

[6] FDA has considered, but rejected, seeking a stay pending appeal, in favor of seeking expedition because of the public interest. FDA is concerned that, if it were to seek a stay pending appeal of the district court's order, Ivax and/or Ranbaxy would seek a stay preventing FDA from approving *any* ANDAs for simvastatin while the appeal was pending — in order to preserve their first-filer eligibility for generic market exclusivity should the Court ultimately affirm the district court's ruling. If granted, such a stay would prevent the entry of any generic simvastatin products into the market pending a resolution of the appeal, and consumers would suffer because Merck's monopoly and the accompanying price structure for its pioneer drug product would continue. Under the district court's order, at least both Ranbaxy and Ivax are eligible for approval on June 23, 2006, so consumers would not be completely deprived of generics as of that date. Accordingly, FDA has opted for expedition as the solution that best protects the public interest.

The parties will serve their briefs by email and hard copies by overnight delivery.

**Conclusion**

For the foregoing reasons, the Court should grant FDA's request for expedition and establish the briefing schedule requested in Point 5, above.

Respectfully submitted,

DOUGLAS N. LETTER
202-514-3603
HOWARD S. SCHER
202-514-4814
202-514-7964 (fax)
*Attorneys, Appellate Staff*
*Civil Division, Department of Justice*
*950 Pennsylvania Ave.,NW, Rm 7239*
*Washington, D.C. 20530-0001*

Of Counsel:

PAULA M. STANNARD
*Acting General Counsel*

SHELDON T. BRADSHAW
*Associate General Counsel*
*Food and Drug Division*

ERIC M. BLUMBERG
*Deputy Chief Counsel, Litigation*

SHOSHANA HUTCHINSON
*Associate Chief Counsel*
*Food and Drug Division*
*U.S. Dept. of Health and Human Serv.*
*Office of General Counsel*
*5600 Fishers Lane*
*Rockville, MD 20857*
301-827-8579