UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SANDOZ, INC. ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> FOOD AND DRUG ADMINISTRATION, *et al.* ) <br> ) <br> Defendants, ) <br> ) <br> TEVA PHARMACEUTICALS USA, INC., ) <br> IVAX PHARMACEUTICALS, INC. ) <br> ) <br> Proposed Intervenors-Defendants. ) | Case No. 06-1134 |

**SUPPLEMENTAL DECLARATION OF DAVID MARSHALL**

I, David Marshall, hereby declare under penalty of perjury as follows:

1. I am the Vice President of Sales and Marketing of Teva Pharmaceuticals USA, Inc. ("Teva"). Teva is the wholly owned, indirect subsidiary of Teva Pharmaceutical Industries Ltd. ("Teva Ltd."), a global pharmaceutical company headquartered in Israel. In turn, Teva indirectly wholly owns Ivax Pharmaceuticals, Inc. ("Ivax"). Teva distributes the finished pharmaceutical products of both Teva Ltd. and Ivax in the United States, and is an industry leader in the development, manufacture, and marketing of generic pharmaceutical products in the United States.

2. As Vice President of Sales and Marketing for Teva, I am involved in the introduction and promotion of new generic drug products for the United States market.

3. On June 23, 2006, the Food and Drug Administration ("FDA") granted Ivax final approval for the sale of generic simvastatin tablets in 5 mg, 10 mg, 20 mg, and 40 mg dosages.

4. FDA simultaneously informed Ivax that it was entitled to a 180-day period of exclusivity for the sale of generic simvastatin in those dosages.

5. Within hours of receiving FDA's final approval letter, Teva began distributing Ivax's generic simvastatin product to its customers.

6. In my capacity as Vice President of Sales and Marketing and through conversations with Teva's customers, I have become aware that Ivax's generic simvastatin product is currently being distributed to end-users.

7. Entry of an injunction preventing the continued distribution of Ivax's generic simvastatin product would seriously erode Teva's long-term goodwill by precluding Teva from fulfilling its existing contracts with major customers.

8. In my capacity as Vice President of Sales and Marketing and through conversations with Teva's customers, I have also become aware that on June 23, 2006, Merck & Co., Inc. ("Merck"), the patentee, began to market its own unbranded simvastatin product (called an "authorized generic") through an agreement with Dr. Reddy's Laboratories Inc. ("Dr. Reddy's").

9. It is my understanding that court action precluding the distribution of Ivax's generic simvastatin product would not prevent Dr. Reddy's from continuing to market its authorized generic.

10. Any action precluding the continued distribution of Ivax's generic simvastatin product would therefore give Dr. Reddy's a distinct advantage in negotiating contracts to supply generic simvastatin, and would allow Dr. Reddy's to further tie up distribution channels, secure

access to customers, increase its sales across all product lines, and retain greater market share in the long term, all to the disadvantage of Ivax and Teva.

11. In the event that Dr. Reddy's acquires Teva's existing distribution channels using the market advantage that a temporary injunction would provide, even a one-week interruption in Ivax simvastatin sales could cost Ivax and Teva in excess of $200 million dollars in lost sales and $150 million in lost profits.

12. A total loss of six-month exclusivity would likely cost Ivax and Teva in excess of $350 million in lost sales and in excess of $250 million in lost profits.

Dated: June 29, 2006

_David M. Marshall_
David Marshall