UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SANDOZ, INC., <br><br> Plaintiff, <br><br> v. <br><br> FOOD AND DRUG ADMINISTRATION, MICHAEL O. LEAVITT and ANDREW C. VON ESCHENBACH, <br><br> Defendants. | Civil Action No. 06-1134 |

## SECOND DECLARATION OF JAYADEEP R. DESHMUKH

1. I, Jayadeep R. Deshmukh, am the Vice President - Intellectual Property for Ranbaxy Laboratories Limited. Ranbaxy Laboratories Limited is a publicly traded company engaged in the development, manufacturing and marketing of pharmaceuticals in the United States and worldwide. Ranbaxy Pharmaceuticals, Inc. is a wholly owned subsidiary of Ranbaxy Inc., which is ultimately a wholly owned subsidiary of Ranbaxy Laboratories Limited. Ranbaxy Inc. is the agent of Ranbaxy Laboratories Limited in the United States. Ranbaxy Laboratories Limited has dealt and continues to deal with the United States Food and Drug Administration ("FDA") through Ranbaxy Inc. and Ranbaxy Pharmaceuticals, Inc.

2. As the Vice President - Intellectual Property for Ranbaxy Laboratories Limited, I am responsible for all intellectual property and regulatory legal aspects of Ranbaxy Laboratories Limited's pharmaceutical business in the United States and in the rest of the world. I am familiar with the marketing of drug products in general and with the marketing of generic drugs in

particular. This document is based on my personal knowledge and records retained by Ranbaxy in the ordinary course of business.

3. I obtained a B.S. in Chemical Engineering in 1984 from Manipal Institute of Technology in India, an M.S. in Chemical Engineering in 1989 from Cleveland State University, and a J.D. in 1992 from Case Western Reserve University. I joined Ranbaxy Laboratories Limited in 1998. I was a patent attorney at Frost and Jacobs during 1992-1994 and at Dinsmore & Shohl LLP during 1994-1998.

Ranbaxy's Investment in the Statin Drugs

4. Ranbaxy Laboratories Limited manufactures and markets generic and branded generic pharmaceuticals as well as active pharmaceutical ingredients ("API"). The company also is engaged in research and development of several novel drugs.

5. Ranbaxy has made a major investment in the production of generic versions of the statin drugs, including simvastatin, believing that it could provide them to the public at a much lower price than that of the brand name drugs.

6. Ranbaxy was aware that the holders of the New Drug Applications ("NDA") for the brand-name statin drugs were attempting to protect their interests with a number of patents. In an effort to get non-infringing generic versions of the drugs to market as rapidly as possible, Ranbaxy made a substantial investment in its research and development and intellectual property capabilities. Ranbaxy believed that it would be able to recoup its investment because it would be able to obtain 180-day exclusivity by virtue of being the first to file an Abbreviated New Drug Application ("ANDA") containing a paragraph IV certification for at least some of the drugs.

7. Ranbaxy successfully developed a non-infringing simvastatin drug product and in 2001 was the first applicant to submit an ANDA referencing Zocor® (simvastatin) with a paragraph IV

2

certification to U.S. Patent No. RE 36,481 ("the '481 patent"), and U.S. Patent No. RE 36,520 ("the '520 patent") for simvastatin 80 mg (Zocor). At the time the paragraph IV certifications were filed for the '481 and '520 patents, each was listed in the Orange Book as claiming Zocor. Ranbaxy was aware that submitting the paragraph IV certifications to the '481 and '520 patents would expose Ranbaxy to patent infringement litigation from Merck.

Ranbaxy's Investment Pays Off With Simvastatin 80 mg

8. As the first to submit a substantially complete ANDA for the 80 mg strength with a paragraph IV certification to the '481 and '520 patents, Ranbaxy is entitled to 180 days of marketing exclusivity for the 80 mg strength of simvastatin. Ranbaxy fought long and hard to have its exclusivity recognized. Though FDA disputed Ranbaxy's entitlement to exclusivity, this Court recently held that Ranbaxy is entitled to 180-day exclusivity for simvastatin. Ranbaxy Labs. Ltd. v. Leavitt, 2006 U.S. Dist. LEXIS 24612 (D.D.C. 2006), appeal docketed.

9. Ranbaxy is relying on the revenue derived from its 180-day exclusivity to support its continuing efforts to challenge other patents and to provide consumers new generic products.

Harm from Disruption to Ranbaxy's Simvastatin Exclusivity

10. Ranbaxy has invested considerable resources in developing its ANDA, manufacturing and launching its simvastatin 80 mg tablet. For example, Ranbaxy has spent $22 million in increasing fermentation capacity and other facility expansion, $7.5 million on building and equipment costs, and has already invested $6.7 million in simvastatin-directed materials, such as API and bulk product inventory. Ranbaxy has also shifted manufacturing capacity away from other drug products in order to be able to satisfy the demand for simvastatin 80 mg.

11. Ranbaxy currently is marketing simvastatin 80 mg tablets, and expects to earn over $50 million in additional sales during the remainder of its exclusivity as a result of existing

commitments to its customers. This revenue will be lost if Ranbaxy is unable to continue marketing simvastatin 80 mg tablets.

12. In addition to its lost sales, Ranbaxy will be unable to recover the costs incurred in assembling the huge inventory necessary to meet the public demand for simvastatin 80 mg. Ranbaxy will have to absorb the cost of purchased raw materials, suffer penalties as a result of its inability to fulfill contracts with suppliers and suffer idle manufacturing capacity. Ranbaxy will incur tens of millions of dollars in unrecoverable costs if it is enjoined from continuing to market simvastatin 80 mg.

13. Ranbaxy competes with Merck & Co., Inc. ("Merck") and Dr. Reddy's Laboratories Ltd. ("Dr. Reddy's"), Merck's authorized generic, for sales of 80 mg simvastatin. Merck has announced that it has reached an agreement with UnitedHealth Group to supply simvastatin at a price that Merck calculates will enable it to undercut Ranbaxy. Any interruption in marketing its product will allow Merck and Dr. Reddy's to step into the void left by Ranbaxy, allowing them to supply Ranbaxy's customers and benefit from increased sales across other products, all at the expense of Ranbaxy. Not being able to continue to market simvastatin would also damage Ranbaxy's business relationships with its customers and undermine the company's credibility. These loses would be irretrievable.

14. Ranbaxy's damage going forward will extend far beyond simvastatin 80 mg. Customers typically prefer to order from fewer rather than many companies. Thus, customers that turn to Dr. Reddy's for 80 mg simvastatin are likely also to turn to Dr. Reddy's for other simvastatin drug products once IVAX's exclusivity for the remaining simvastatin strengths expires. Because of its ability to supply customers with simvastatin 80 mg, Ranbaxy expects that it will ultimately attain 25% to 28% of the total market for all simvastatin strengths. If Ranbaxy is unable to

continue to market its product, its expected market share will be reduced substantially, likely to no more than 10%.

15. Once a company is entrenched in an account, it typically will benefit across the board. Customers that turn to Dr. Reddy's for simvastatin may also turn to Dr. Reddy's, instead of Ranbaxy, for other drug products.

16. Loss of its statutorily mandated "head start" also would cause Ranbaxy irreparable injury because it would deprive Ranbaxy of the intangible benefits that go along with being the first generic on the market, such as the opportunity to become the most visible generic entrant, forge early relationships with customers, and acquire market share. All of these benefits extend far beyond the exclusivity period. As this Court has observed, "[t]he earliest generic drug manufacturer in a specific market has a distinct advantage over later entrants." Mova v. Shalala, 955 F. Supp. 128,131, aff'd 140 F.3d 1060 (D.C. Cir. 1998).

17. Ranbaxy will be substantially, and irreparably, harmed if it is prevented from continuing to market its simvastatin 80 mg tablets.

Sandoz will suffer no appreciable harm

18. By contrast, the harm to Sandoz would be minimal. According to Hoovers, Novartis AG, Sandoz' parent company, dwarfs Ranbaxy in size – its annual sales exceed $32 billion, over 25 times those of Ranbaxy. Sandoz's projected loss would have a negligible effect on the company as a whole.

Effect on Price of Simvastatin

19. The average price of Ranbaxy's generic simvastatin 80 mg tablets currently is less than one third the price charged by Merck for Zocor 80 mg prior to June 23, 2006. If Ranbaxy is unable to continue marketing, the price of simvastatin 80 mg will be expected to increase.

5

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 29th day of June 2006.

_____
Jayadeep R. Deshmukh