## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SANDOZ, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 06-1134 (RCL) |
| | ) | |
| FOOD AND DRUG ADMINISTRATION, | ) | |
| MICHAEL O. LEAVITT, and | ) | |
| ANDREW C. VON ESCHENBACH, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### PLAINTIFF SANDOZ, INC.'S REPLY MEMORANDUM
### IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Plaintiff Sandoz, Inc. ("Sandoz") respectfully submits this reply memorandum in support of its motion for preliminary injunction.[1] This memorandum responds to the opposition arguments of the Food and Drug Administration and other federal defendants (collectively "FDA"), intervenors-defendants IVAX Pharmaceuticals, Inc. ("IVAX") and Teva Pharmaceuticals USA, Inc. ("Teva"), and intervenor-defendant Ranbaxy Laboratories Ltd. ("Ranbaxy") ("FDA Opp.," "IVAX/Teva Opp.," and "Ranbaxy Opp.," respectively).

### INTRODUCTION

This case is an outgrowth of Judge Roberts's April 30 decision in *Ranbaxy Laboratories, Ltd. v. Leavitt*, now on appeal. For purposes of this lawsuit, Sandoz accepts defendants' interpretation of Judge Roberts's decision, that IVAX and Ranbaxy are entitled to 180-day exclusivity. Similarly,

---

[1] During the hearing on Sandoz's motion for a temporary restraining order ("TRO"), the Court deemed Sandoz's motion for a TRO to be a motion for a preliminary injunction. *See* Minute Order from June 23, 2006 TRO hearing.

Sandoz accepts defendants' interpretation that the decision can be read to require FDA to relist the '481 and '520 patents in the Orange Book. Thus, this lawsuit is not an improper collateral attack on that decision.

Sandoz's only disagreement with defendants is over how FDA implemented the decision. Sandoz believes that FDA was required to implement the decision in a manner consistent with the FDC Act. FDA should have given full effect to Judge Roberts's decision and the plain language of the FDC Act by concluding that IVAX and Ranbaxy are entitled to 180-day exclusivity that blocks some later sponsors, but not Sandoz or Aurobindo Pharma Ltd. ("Aurobindo").

The preliminary injunction sought by Sandoz would not interfere with the continued marketing of IVAX's and Ranbaxy's generic simvastatin products. It would advance the public interest by providing for more generic competition for simvastatin products, resulting in lower prices.

**ARGUMENT**

**I.     SANDOZ IS LIKELY TO PREVAIL ON THE MERITS**

**A.     FDA's Decision Fails Under Chevron Step 1 Because It Is Contrary To The Plain Language Of The FDC Act**

FDA asserts that:

> Judge Roberts' decision is not open to multiple interpretations. ***
> Because FDA's reading of Judge Roberts' decision to require
> relisting was the only reasonable interpretation of the decision,
> Sandoz cannot show that it has any likelihood of success in showing
> that FDA erred in relisting the patents in response to Judge Roberts'
> decision and in awarding 180 days of exclusivity to IVAX and
> Ranbaxy.

FDA Opp. at 15-16 (footnote omitted). *See* IVAX/Teva Opp. at 10-13 and Ranbaxy Opp. at 7-9.

Whether Judge Roberts's decision is capable of multiple interpretations is beside the point, as Sandoz's main contention is that FDA improperly implemented Judge Roberts's decision in its June 22, 2006 letter decision ("FDA Letter," Att. B to FDA Opp.).[2]  As noted in our opening memorandum, Judge Roberts's opinion held that FDA's decision to deny the IVAX and Ranbaxy citizen petitions was unlawful and remanded to FDA.  However, Judge Roberts's opinion did not provide any specific guidance to FDA on patent relisting.  More importantly, the opinion did not expressly address which ANDA sponsors would have their final approvals delayed by 180-day exclusivity.  While FDA boldly asserts that "Judge Roberts' decision is unambiguous in its holding and direction to the agency," FDA Opp. at 5, the question of which ANDA sponsors would be delayed by exclusivity was simply not addressed, directly or indirectly.[3]

Accepting FDA's interpretation that it was required by Judge Roberts's decision to relist the '481 and '520 patents in the Orange Book, that still does not address which ANDA sponsors would have their final approvals delayed by the 180-day exclusivity periods of IVAX and Ranbaxy.  As discussed, under the plain language of the FDC Act, 180-day exclusivity only delays the final approvals of those subsequent sponsors that have Paragraph IV certifications to the two patents.  Sandoz, Aurobindo, and any other similarly situated ANDA sponsors are not delayed.

---

[2]     The FDA Letter is not expressly referenced in Sandoz's TRO motion and accompanying papers, as the letter did not issue until after Sandoz filed this lawsuit.  However, the arguments in Sandoz's memorandum in support of its TRO motion apply with equal force to the FDA Letter.

[3]     FDA complains that Sandoz failed to point out any specific language in Judge Roberts's decision to support the contention that FDA did not properly implement the decision on remand. FDA Opp. at 5, 16.  As we have repeatedly stated, the decision is totally silent on which ANDA sponsors would be delayed by 180-day exclusivity.  Obviously, we cannot cite to specific language that is not present.

We start with the statutory language.  *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984) ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." (footnote omitted)).

The relevant provision regarding 180-day exclusivity provides:

> If the application contains a certification described in subclause (IV) of paragraph (2)(A)(vii) [namely, a Paragraph IV certification] and is for a drug for which a previous application has been submitted under this subsection [containing[4]] such a certification, the application shall be made effective not earlier than one hundred and eighty days after –
>
> (I)  The date the Secretary receives notice from the applicant under the previous application of the first commercial marketing of the drug under the previous application, or
>
> (II)  The date of a decision of a court in an action described in clause (iii) holding the patent which is the subject of the certification to be invalid or not infringed, whichever is earlier.

21 U.S.C. § 355(j)(5)(B)(iv).  The sponsor of the first Paragraph IV ANDA receives the 180-day exclusivity benefit.  To use the statutory language, the first Paragraph IV ANDA sponsor submitted the Paragraph IV ANDA that is "previous" to all other Paragraph IV ANDAs, such that there is no "previous application" with respect to that application.  The statutory provision confers the benefit by delaying the effective date of approval of each subsequent application with a Paragraph IV certification to the same patent.  Again, to use the statutory language, a subsequent application is an

---

[4]     Although the statutory language as enacted uses the word "continuing," it has been repeatedly recognized by the courts that the word should be "containing."  *See Mylan Pharmaceuticals, Inc. v. Henney,* 94 F. Supp. 2d 36, 55-56 (D.D.C. 2000) (extensive discussion, concluding that "continuing" was the result of a scrivener's error).  *See also Purepac Pharmaceutical Co. v. Freedman*, 162 F.3d 1201, 1203 n.3 (D.C. Cir. 1998); *Mova Pharmaceutical Corp. v. Shalala*, 140 F.3d 1060, 1064 n.3 (D.C. Cir. 1998).

4

application "for a drug for which a previous application has been submitted under this subsection [containing] such a [Paragraph IV] certification."

Thus, under the plain statutory language, any 180-day exclusivity rights of IVAX and Ranbaxy do not delay the final approvals of sponsors such as Sandoz and Aurobindo that did not, and do not, have Paragraph IV certifications to the two patents in question. The plain language controls: "It is well established that 'when the statute's language is plain, the sole function of the courts … is to enforce it according to its terms." *Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004) (internal citation omitted). Under *Chevron* Step 1, that should be the end of the inquiry.

### B.    FDA's Decision Cannot Stand Under Chevron Step 2

1.    For the reasons discussed above and in our opening memorandum, Sandoz believes that FDA's decision fails under *Chevron* Step 1. FDA counters that, because the FDC Act can be viewed as not directly addressing the current situation, FDA's decision should be analyzed under *Chevron* Step 2. FDA Opp. at 20.

Under *Chevron* Step 2, where the court determines that Congress has not directly addressed the precise question at issue, the court is required to defer to the agency's interpretation so long as that interpretation is reasonable and is based on a permissible construction of the statute. *Chevron*, 467 U.S. at 843. Here, for the reasons discussed below, FDA's decision is unreasonable and cannot stand.

FDA and intervenors take the position that Sandoz and Aurobindo have an obligation to certify to the '481 and '520 patents upon their relisting by FDA, citing 21 U.S.C. § 355(j)(2)(A)(vii) and 21 C.F.R. § 314.94(a)(12)(viii)(C) in support. FDA Opp. at 9-10; IVAX/Teva Opp. at 11; Ranbaxy Opp. at 7-8.

Accepting for purposes of discussion FDA's view that it was required by Judge Roberts's decision to relist the '481 and '520 patents (*see* FDA Opp. at 15), there is no directly on point statutory provision or regulation that fits the situation. The closest analogous regulation is 21 C.F.R. § 314.94(a)(12)(vi), which addresses situations where patents are not listed in the Orange Book in a timely fashion. That regulation provides that where a patent is listed in the Orange Book more than 30 days after issuance:

> an applicant who submitted an abbreviated new drug application for that drug that contained an appropriate patent certification before the submission of the patent information is not required to submit an amended certification. An applicant whose abbreviated new drug application is submitted after a late submission of patent information, or whose pending abbreviated application was previously submitted but did not contain an appropriate patent certification at the time of the patent submission, shall submit a certification under paragraph (a)(12)(i) of this section or a statement under paragraph (a)(12)(iii)[5] of this section as to that patent.

Here, at the time that Sandoz and Aurobindo submitted their ANDAs in 2005, only the '784 patent was listed in the Orange Book in connection with Zocor®; the '481 and '520 patents were not then listed. Both Sandoz and Aurobindo included Paragraph III certifications for the '784 patent with their initial ANDA submissions, signifying their intent to seek final approval after the expiration of the '784 patent. Sandoz and Aurobindo did not – indeed, could not – certify to the '481 and '520 patents when they submitted their ANDAs. Sandoz and Aurobindo complied fully with the statute and FDA's implementing regulation when they submitted their ANDAs. They had a

---

[5]    A "statement under paragraph (a)(12)(iii)" concerns patents that claim a method of using the innovator drug for which the ANDA applicant is not seeking approval. *See* 21 U.S.C. § 355(j)(2)(A)(viii). Such a statement is of no relevance to this lawsuit.

legitimate expectation of being eligible to receive final ANDA approval upon expiration of the '784 patent on June 23, 2006.

The '481 and '520 patents were not relisted in the Orange Book until on or about June 19, 2006, long after their issuance. To use the language of the quoted regulation, Sandoz and Aurobindo were each "an applicant who submitted an abbreviated new drug application for that drug [here, simvastatin] that contained an appropriate patent certification [here, to the '784 patent] before the submission of the patent information." Thus, under the regulation, neither Sandoz nor Aurobindo was or is required to submit an amended certification.

Section 314.94(a)(12)(vi) is the most specific regulation that has any bearing on the current matter, as it addresses the limited situations where the sponsor of a pending ANDA is not required to certify to Orange Book patents. In comparison, § 314.94(a)(12)(viii)(C), upon which all defendants rely, is very general in nature and applies to all ANDAs. As a well established principle of construction, specific provisions govern over more general ones. *See, e.g., Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992); *Techniarts Eng'g v. United States*, 51 F.3d 301, 304 (D.C. Cir. 1995). FDA's failure to apply, by analogy, § 314.94(a)(12)(vi), or to even discuss it in its June 22 decision letter, constitutes arbitrary and capricious agency behavior.

Under Step 2 of *Chevron*, an agency determination is not to be disturbed unless "arbitrary or capricious in substance, or manifestly contrary to the statute." *Household Credit Servs., Inc. v. Pfennig*, 541 U.S. 232 (2004) (internal citation and quotation marks omitted); *American Fed. of Labor and Congress of Indus. Organizations v. Chao*, 409 F.3d 377, 392 (D.C. Cir. 2005). The Step 2 *Chevron* inquiry as to whether an agency has interpreted an ambiguous statute reasonably overlaps with the arbitrary and capricious standard of the APA. *Shays v. Federal Election Commission*, 414 F.3d 76, 96-97 (D.C. Cir. 2005). *See also Chamber of Commerce of the U.S. v.*

*FEC*, 76 F.3d 1234, 1235 (D.C. Cir. 1996); *Nat'l Ass'n of Regulatory Utility Comm'rs v. ICC*, 41 F.3d 721, 726-27 (D.C. Cir. 1994). When judged by these standards, FDA's decision cannot stand.

2.    FDA's decision is not based on a regulation resulting from notice-and-comment rulemaking or on formal adjudication, thereby limiting the amount of deference to which it is entitled. Nevertheless, FDA's decision may be entitled to some degree of deference, depending on "the merit of its writer's thoroughness, logic, and expertness, its fit with prior interpretations, and any other sources of weight." *See United States v. Mead Corp.*, 533 U.S. 218, 235 (2001). Here, however, where FDA's decision has no statutory or regulatory basis and has the effect of undercutting the statutory language on 180-day exclusivity, it is not entitled to any deference.

Moreover, it is well settled that a reviewing court owes no deference to an agency's reading of judicial orders or decisions. *American BioScience, Inc. v. Thompson*, 269 F.3d 1077, 1085 (D.C. Cir. 2001) (involving patent listing provisions of FDC Act). Here, FDA states repeatedly that it implemented Judge Roberts's decision in the only reasonable manner. FDA Opp. at 5, 16, and 21. For the reasons discussed above, that contention is wrong, and FDA's interpretation is owed no deference.

**C.    FDA's Decision Fails For Lack Of Reasoned Decisionmaking**

FDA has not explained the legal and policy bases for its decision. At a minimum, FDA did not address any of the issues raised in this lawsuit. Rather, FDA simply assumed without explanation that Judge Roberts's decision required the agency to award 180-day exclusivity that blocked all subsequent ANDAs, without regard to whether these ANDAs included Paragraph IV certifications to the two patents. FDA's letter stated:

8

>The court found that FDA's delisting of the '481 and '520 patents in this case was inconsistent with congressional intent regarding eligibility for exclusivity. The Agency believes that the order effectively requires that the patents be relisted, and that eligibility for 180-day exclusivity be determined based on the paragraph IV certifications made to the patents.
>
>* * *
>
>Because the '481 and '520 patents for Zocor are relisted in the Orange Book, any new or pending ANDA referencing Zocor must, pursuant to section 505(j)(2)(A)(vii) of the Act [21 U.S.C. § 355(j)(2)(A)(vii)], contain patent certifications to these patents. See Apotex, Inc. v. Thompson, 347 F.3d 1335, 1350-51 (Fed. Cir. 2003). * * * While the patents remain listed in the Orange Book, any ANDA for simvastatin that does not contain certifications to the '481 and '520 patents will not be eligible for approval.

FDA Letter at 2.

The Federal Circuit's decision in the *Apotex* case is of no direct relevance. There, the argument before the Federal Circuit was that, because Section 355(j)(2)(A) says nothing about submitting additional certifications after the ANDA is filed, "the FDA may not impose such a requirement." 347 F.3d at 1350. The Federal Circuit rejected that argument: "We therefore uphold the FDA's practice of requiring certifications in response to patent information that is submitted after the ANDA is first filed." 347 F.3d at 1350-51. Sandoz does not dispute that basic proposition. However, as discussed above, the situation involved here is the subject of an analogous FDA regulation, which the agency has chosen to ignore.

Other than the reference to the Federal Circuit's decision in *Apotex*, the FDA decision letter is devoid of any reasoning. In that regard, it provided even less explanation than, for example, another FDA decision regarding 180-day exclusivity that was rejected by the courts of this Circuit on three separate occasions because of FDA's lack of reasoned decisionmaking. *See Teva*

*Pharmaceuticals USA, Inc. v. FDA*, 441 F.3d 1 (D.C. Cir. 2006).  On this basis alone, FDA's decision was fatally flawed and cannot stand.

## II.     SANDOZ WILL BE IRREPARABLY HARMED IN THE ABSENCE OF A PRELIMINARY INJUNCTION

1.    IVAX/Teva and Ranbaxy would have this Court believe that only the deprivation of an ANDA sponsor's 180-day exclusivity rights can constitute irreparable harm, and that any other deprivation of the right to market is mere economic harm that cannot support the entry of an injunction.[6]  IVAX/Teva Opp. at 15; Ranbaxy Opp. at 9-11.  That view is incorrect and contrary to the law of the D.C. Circuit.

In *Teva Pharmaceuticals, USA, Inc. v. U.S. FDA*, 182 F.3d 1003 (D.C. Cir. 1999), plaintiff Teva was in the same situation with respect to demonstrating irreparable harm as Sandoz in the current lawsuit.  Teva, like Sandoz here, did not claim that it was entitled to a 180-day exclusive marketing period.  Teva, like Sandoz here, sought injunctive relief on the basis that it was entitled to final ANDA approval because it was not blocked by the relevant 180-day exclusive marketing period.  The district court denied relief.  The D.C. Circuit reversed, and remanded to the district court to consider anew Teva's request for injunctive relief.  In so doing, the D.C. Circuit stated that Teva (and another similarly situated ANDA sponsor) would "face continued harm because of their denied access to the market…harm potentially heightened because of [the first Paragraph IV ANDA

---

[6]     The specific irreparable harm to Sandoz flowing from FDA's unlawful action is described in detail in Sandoz's TRO memorandum and the accompanying Declaration of Frank Dellafera, and will not be repeated here.

sponsor's] period of market exclusivity."  182 F.3d at 1011, n.8 (internal citation omitted).[7]

2.   All defendants contend that Sandoz's purported delay in bringing this lawsuit undercuts any claim of irreparable harm.  FDA Opp. at 25; IVAX/Teva Opp. at 1, 13; Ranbaxy Opp. at 12. Those contentions are without merit, as they overlook the statutory requirement that only "final agency action" is subject to review under the Administrative Procedure Act, 5 U.S.C. § 704.  Even a cursory examination of the events that preceeded this lawsuit shows that those events were not legally sufficient events for instigating this litigation.

First, FDA's tentative approval letter to Aurobindo (Ex. 1 to Declaration of Sadie Ciganek, accompanying Sandoz's TRO motion) only stated that exclusivity issues were under litigation; it did not state that, if FDA lost, Aurobindo would necessarily be blocked by another sponsor's 180-day exclusivity.  Viewed objectively, it falls far short of being "final agency action."

Second, the statements in FDA's motion to the D.C. Circuit seeking expedited consideration of the agency's appeal of Judge Roberts's decision were only the statements of FDA's counsel (the Department of Justice), which do not constitute "final agency action" by FDA itself.  *See, e.g., American Federation of Government Employees v. O'Connor*, 747 F.2d 748 (D.C. Cir. 1984). Turning to the substance of those statements, FDA's motion did not indicate that FDA would not grant final ANDA approval to other sponsors, in addition to IVAX and Ranbaxy, on June 23, 2006. In fact, the plain language of that motion indicates that the matter was still under consideration by FDA:  "Under the district court's order, *at least* both Ranbaxy and Ivax are eligible for approval on June 23, 2006…." (Emphasis added.)  Appellant's [FDA's] Motion for Expedited Briefing and Oral

---

[7]    On remand, the district court concluded that Teva was entitled to immediately effective final approval of its ANDA.  *Teva Pharmaceuticals, USA, Inc. v. U.S. FDA*, 1999 WL 1042743 (D.D.C. Aug. 19, 1999).  FDA appealed, and the D.C. Circuit affirmed. *Teva Pharmaceuticals, USA, Inc. v. U.S. FDA*, 254 F.3d 316 (table), 2000 WL 1838303 (D.C. Cir. Nov. 15,  2000).

Argument at 11, n.6 (attached to IVAX/Teva Opp.).  Taken at face value, that statement can only mean that FDA was contemplating additional final approvals, other than for IVAX and Ranbaxy, on June 23.

Third, even if FDA's relisting of the '481 and '520 patents on or about June 16, 2006 constituted final agency action for some purposes, it did not do so with regard to Sandoz's current contentions, as FDA provided no notice as to how the agency would award 180-day exclusivity in connection with those relisted patents.[8]  Thus, Sandoz did not unreasonably delay in bringing this lawsuit.[9]

3.   IVAX/Teva and Ranbaxy argue that Sandoz is not entitled to injunctive relief because this lawsuit is nothing more than a collateral attack on Judge Roberts's April 30, 2006 decision in *Ranbaxy Laboratories, Ltd. v. Leavitt*, which is now on appeal to the D.C. Circuit.  IVAX/Teva Opp. at 8-10; Ranbaxy Opp. at 9.  That characterization is not correct.  As discussed above and in Sandoz's opening memorandum, Sandoz does not take issue with Judge Roberts's decision, only with the way in which FDA has attempted to implement it.  Thus, the fact that Sandoz may have had full knowledge of the proceedings before Judge Roberts and could have moved to intervene is of no relevance.

---

[8]     FDA's June 22, 2006 decision letter does not contend that the agency provided any public notice of the relisting of the patents on June 16, and Sandoz is not aware of any.  Sandoz had no notice of the agency's relisting of the two patents until it contacted FDA on June 19, 2006.  *See* Declaration of Shashank Upadhye ¶¶ 17, 19 (submitted in support of Sandoz's Motion for TRO).

[9]     In support of its argument that Sandoz unreasonably delayed in bringing this lawsuit, FDA makes the incredible statement that "[t]he writing was on the proverbial wall, however, long before June 22, 2006."  FDA Opp. at 25.  If "the writing was on the proverbial wall" were the standard for judicial review of agency action, federal courts would be inundated with, for example, lawsuits challenging proposed rules, or even an agency's intent to issue a proposed rule, based solely on speeches by agency officials.

4.  Finally, even if this Court should conclude that Sandoz has not established irreparable injury, Sandoz is still entitled to relief.  As the D.C. Circuit stated in *American BioScience, Inc. v. Thompson*, 269 F.3d 1077, 1084 (D.C. Cir. 2001), "whether or not appellant [plaintiff] has suffered irreparable injury, if it makes out its case under the APA it is entitled to a remedy" (footnote omitted).  There, without addressing whether irreparable harm had been established, the D.C. Circuit concluded that FDA's action (which involved the patent listing provisions of the FDC Act) "was arbitrary and capricious and must be vacated."  269 F.3d at 1086.

## III.    THE BALANCING OF HARMS AND THE PUBLIC INTEREST FAVOR GRANTING A PRELIMINARY INJUNCTION

1.  The assertions by IVAX/Teva and Ranbaxy of the harm that would flow from a preliminary injunction are all premised on the assumption that a preliminary injunction would prevent them from marketing their currently approved generic simvastatin products.  *See* IVAX/Teva Opp. at 1, 2, 17-18, 21-22 and accompanying Supplemental Declaration of David Marshall at ¶¶ 7, 9-11; Ranbaxy Opp. at 12-13 and accompanying Second Declaration of Jayadet R. Deshmukh ("Sec. Deshmukh Decl.") at ¶¶ 11-14, 17, 19.  *See also* FDA Opp. at 27.  Those assertions are unfounded, as Sandoz does not seek any relief that would affect the marketing of the IVAX and Ranbaxy simvastatin products.

Sandoz's proposed order granting a preliminary injunction (attached to this memorandum) is consistent with its Complaint for Declaratory and Injunctive Relief.  Sandoz's proposed order would preliminarily enjoin FDA from delaying the final approval of Sandoz, Aurobindo, or any other ANDA sponsor that was not required to certify to the '481 and '520 patents at the time of original ANDA submission, solely on the basis that final ANDA approval is delayed because of the 180-day exclusivity rights of IVAX and/or Ranbaxy.  Sandoz does not seek any relief that would deny

American consumers the benefit of lower cost generic simvastatin products by forcing currently approved products from the market.[10]

2.   A grant of a preliminary injunction would be in the interests of consumers, as they would benefit from fuller marketplace competition for generic versions of Zocor®.  Without question, marketplace competition involving multiple competing generic products brings lower prices to benefit the public.  *See, e.g.,* Appellants' [FDA's] Motion for Expedited Briefing and Oral Argument at 10 (attached to IVAX/Teva Opp.).

3.   In discussing potential harm, IVAX/Teva makes the unfounded assumption that IVAX's 180-day exclusivity rights entitle it to be the "exclusive" generic distributors of generic simvastatin. IVAX/Teva Opp. at 18. That premise is not well founded, as 180-day exclusivity does not equate with the right to be the "exclusive" generic distributor.  First, it is well recognized that in many instances (such as here, *see* IVAX/TEVA Opp. at 17-18 and Ranbaxy Opp. at 13) an "authorized generic" version of the innovator sponsor's product effectively competes with the ANDA sponsor entitled to 180-day exclusivity.  *See Teva Pharmaceutical Industries Ltd. v. Crawford*, 410 F.3d 51 (D.C. Cir. 2005) (rejecting Teva's argument that "authorized generics" are not permitted by the FDC Act).  Second, in FDA's view, more than one Paragraph IV ANDA sponsor may be eligible for 180-day exclusivity with regard to the same drug product if multiple sponsors file Paragraph IV certifications on the same "first" day.  *See* 68 Fed. Reg. 45,252 (Aug. 1,

---

[10]      Presumably, the arguments of IVAX/Teva and Ranbaxy are based on Sandoz's proposed order granting a TRO.  In that proposed order, solely for purposes of maintaining the status quo, Sandoz asked this Court to temporarily restrain FDA from approving any simvastatin ANDAs, pending consideration of Sandoz's motion for preliminary injunction.  When Sandoz filed its motion for a TRO on June 22, no generic simvastatin products had received final approval.

2003) (announcing availability of Guidance for Industry – 180-Day Exclusivity When Multiple ANDAs Are Submitted on the Same Day). It is also FDA's view that 180-day exclusivity may have to be "shared" when different sponsors are the first to submit Paragraph IV certifications with regard to different patents for the same generic drug product. *See Apotex Inc. v. Food and Drug Administration*, 441 F. Supp. 2d 61 (D.D.C. 2006), *appeal pending*, No. 06-5060 (D.C. Cir.). *See also Apotex, Inc. v. FDA*, 393 F.3d 210 (D.C. Cir. 2004). Finally, patent expiration terminates any 180-day exclusivity stemming from a Paragraph IV certification to that patent. *See Dr. Reddy's Laboratories, Inc. v. Thompson*, 302 F.Supp. 2d 340, 350-51 (D.N.J. 2003).

At the same time, the award of exclusivity to IVAX and Ranbaxy that does not block sponsors like Sandoz and Aurobindo by no means renders that exclusivity a nullity. Those exclusivity rights would still operate to delay the final approvals of any ANDA sponsors that originally submitted Paragraph IV certifications to the '481 and '520 patents (because the patents were listed in the Orange Book at the time of their initial ANDA submissions). It is implicit in the FDA Decision Letter that there are sponsors of pending ANDAs that are so situated.[11]    The exclusivity rights would also delay the final approvals of any sponsors that submit ANDAs after the

---

[11]     Teva may be such a sponsor. In a comment to FDA dated June 8, 2005, Teva stated that the IVAX and Ranbaxy petitions are without merit and should be denied. In an abrupt about-face, Teva's October 21, 2005 comment stated that "Teva has no objection to either request and, thus, no objection to the FDA granting the Petitions. Accordingly, Teva withdraws its response of June 8, 2005." Presumably, Teva's dramatic change in position was caused by its acquisition of IVAX.

patents were relisted on or about June 16, 2006.[12]

## CONCLUSION

For the reasons discussed above and in Sandoz's opening memorandum, Sandoz is entitled to a preliminary injunction that enjoins FDA from delaying the final approval of any ANDA (such as the ANDAs sponsored by Sandoz and by Aurobindo) where the ANDA sponsor was not required to certify to the '481 and '520 patents at the time of initial ANDA submission, solely on the basis that final ANDA approval is delayed by the 180-day exclusivity rights of IVAX and/or Ranbaxy. A proposed Order setting forth the requested relief is attached.

In the interest of judicial economy and a prompt decision, Sandoz believes that this motion can be decided without further argument, unless the Court concludes that argument would be beneficial.

In the event the Court denies the requested relief, Sandoz respectfully requests that the Court nevertheless enter a temporary injunction to permit Sandoz, if it so desires, to seek an injunction

---

[12]    Ranbaxy states that it expended considerable resources in developing a non-infringing generic version of Zocor®, and that it expected to recover those resources by virtue of its 180-day exclusivity. *See* Ranbaxy Opp. and Sec. Deshmukh Decl. at ¶¶ 6-7. Ranbaxy's purported expenditures in developing a non-infringing generic version of Zocor® are immaterial, as Merck itself decided that the '481 and '520 patents are legally not relevant, which decision was reflected in Merck's requests to FDA that the patents be removed from the Orange Book. Nor can it be reasonably inferred that Merck's decision to remove the patents from the Orange Book was a direct result of Ranbaxy's Paragraph IV certification and notice to Merck. Ranbaxy apparently submitted its ANDA with Paragraph IV certifications to the '481 and '520 patents in November 2001. *See Ranbaxy Laboratories Ltd. v. Leavitt*, 2006 WL 1147797 at *4 (Att. A to FDA Opp.), Merck did not ask FDA to remove the two patents from the Orange Book until October 2003. *Id.* The only logical inference is that Merck did so in response to FDA's June 18, 2003 final rule on the types of patents that are appropriately listed in the Orange Book, 68 Fed. Reg. 36,676.

pending appeal from the D.C. Circuit.  In the interest of judicial economy, Sandoz respectfully

requests that the Court address this issue in its decision.


July 7, 2006                                          Respectfully submitted,

                                                      /s/ Arthur Y. Tsien

                                                      Arthur Y. Tsien, Bar No. 411579
                                                      Patricia E. Pahl, Bar No. 427347
                                                      OLSSON, FRANK AND WEEDA, P.C.
                                                      1400 16th Street, N.W., Suite 400
                                                      Washington, D.C. 20036-2220
                                                      (202) 789-1212
                                                      (202) 234-3537 (fax)

                                                      Attorneys for Sandoz, Inc.

Of Counsel:

Shashank Upadhye, Esq.
Vice President – Head of Intellectual
   Property, Sandoz U.S.
Sandoz, Inc.
506 Carnegie Center
Princeton, NJ  08540-6543
609/627-8511
609/627-8500 (main)
609/627-8684 (FAX)